1   **WO**

2

3

4

5

6           **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9   Ronald Whaley,                           No. CV-19-02442-PHX-DJH

10               Plaintiff,                   **ORDER**

11   v.

12   Bonded Logic Incorporated, et al.,

13               Defendants.

14

15          This matter is before the Court on Defendants' Motion for Summary Judgment

16   (Doc. 17). Plaintiff filed his Response (Doc. 18), and Defendants filed their Reply (Doc.

17   19).[1] Because Defendants' Reply was not timely, Defendants have also filed a Motion for

18   Extension of Time to File Reply pursuant to Federal Rule of Civil Procedure 6(b)(1)(B)

19   and Local Rule 6.1 (Doc. 20). Finding good cause, the Court grants Defendants' Motion

20   for Extension of Time (Doc. 20), and it will now assess the Motion for Summary Judgment.

21   **I.      Background**

22          This case concerns the termination of Plaintiff Ronald Whaley ("Whaley") from his

23   position as Chief Executive Officer of Bonded Logic, Inc., United Fibers, LLC, and

24   Phoenix Fibers, LLC (collectively, "Defendants"). Defendants are a family-owned group

25   of businesses, managed by James Kean and his sons, Tod and Michael (the "Keans"). (Doc.

26   17 at 2). In the fall of 2017, the Keans hired Whaley to help prepare the Defendant

27   ───────────────────────────
     [1] Both parties requested oral argument on this Motion. The Court denies the requests
28   because the issues have been fully briefed and oral argument will not aid the Court's
     decision.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings);
     LRCiv 7.2(f) (same).

1  companies for sale to a third-party. (Doc. 17 at 2–3). Over the course of the year, Whaley

2  and the Keans began to disagree over how the companies were managed. (*Id.* at 5–6); (Doc.

3  18 at 3). These disagreements grew to the point where James Kean wrote in an August 13,

4  2018, letter to Tod Kean that they would "need a new CEO or General Manager, sometime

5  after the first of the year." (Doc. 17-2 at 5).

6  Later that month, Whaley had a cardiac emergency and spent three days, August

7  22–24, in the hospital. (Doc. 1 at ¶ 36). Whaley alleges that he has a history of heart

8  problems. (Doc. 18 at 3). On August 23, Whaley texted Tod Kean to say he was in the

9  hospital because of his heart condition. (Doc. 17 at 9). Defendants allege, and Whaley does

10  not dispute, that they were previously unaware Whaley had a heart condition. (*Id.*) On

11  September 17, 2018, the Keans delivered a termination letter to Whaley containing several

12  reasons for their decision, none of which were related to Whaley's medical condition. (Doc.

13  17 at 11).

14  Whaley brings his sole claim under the Americans with Disabilities Act ("ADA"),

15  42 U.S.C. § 12112, alleging that Defendants terminated his employment because of his

16  heart condition. (Doc. 1 at ¶ 56). Defendants argue there is no such discrimination because

17  they had decided to terminate Whaley for performance reasons before they knew of the

18  heart condition. (Doc. 17 at 17).

19  **II.     Summary Judgment Standard**

20  A court will grant summary judgment if the movant shows there is no genuine

21  dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R.

22  Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is

23  genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson*

24  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here a court does not weigh evidence to

25  discern the truth of the matter; it only determines whether there is a genuine issue for trial.

26  *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is

27  material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts

28  that might affect the outcome of a suit under the governing law can preclude an entry of

1   summary judgment. *Id.*

2        The moving party bears the initial burden of identifying portions of the record,

3   including pleadings, depositions, answers to interrogatories, admissions, and affidavits,

4   that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the

5   burden shifts to the non-moving party, which must sufficiently establish the existence of a

6   genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

7   *Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed,

8   and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  But

9   if the non-movant identifies "evidence [that] is merely colorable or is not significantly

10  probative, summary judgment may be granted." *Id.* at 249–50.

11  **III.    ADA Discrimination Standard**

12       Whaley brings his discrimination claim under 42 U.S.C. § 12112 of the ADA, which

13  prohibits employers from taking adverse employment actions against their employees on

14  the basis of disability. (Doc. 1 at ¶¶ 49–58). If a plaintiff alleges his employer terminated

15  him in violation of the ADA, he may establish a *prima facie* claim of discrimination by

16  showing three elements: (1) that he was disabled under the ADA, (2) that he can perform

17  the essential functions of the job with or without reasonable accommodation, and (3) that

18  the employer terminated him because of his disability. *See Dunlap v. Liberty Nat. Prods.,*

19  *Inc.*, 878 F.3d 794, 798–99 (9th Cir. 2017).

20       An individual is disabled under the ADA if he has an impairment that substantially

21  limits a major life activity, has a record of such an impairment, or if that individual is

22  regarded as having such an impairment. 42 U.S.C. § 12102(1). To show that an employer

23  terminated an employee because of a disability, it is not enough to "only show that a

24  disability was a motivating factor of the adverse employment action." *Murray v. Mayo*

25  *Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (overruling *Head v. Glacier Nw., Inc.*, 413

26  F.3d 1053 (9th Cir. 2005) and adopting the reasoning of *Univ. of Texas Sw. Med. Ctr. v.*

27  *Nassar*, 570 U.S. 338 (2013)), *cert. denied*, 206 L.Ed.2d 855 (Apr. 27, 2020). Instead, ADA

28  discrimination claims under 42 U.S.C. § 12112, "must be evaluated under a but-for

1    causation standard." *Id.* at 1107; *see also Nassar*, 570 U.S. at 360 ("Title VII retaliation

2    claims must be proved according to traditional principles of but-for causation, not the

3    lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful

4    retaliation would not have occurred in the absence of the alleged wrongful action or actions

5    of the employer.").

6          Once a plaintiff makes a *prima facie* claim of discrimination under the ADA, the

7    defendant must then provide a legitimate nondiscriminatory reason for its conduct. *Snead*

8    *v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) (applying the

9    *McDonnell Douglas* burden-shifting framework to ADA claims). Then, the plaintiff carries

10    the burden to show why the defendant's reason is pretextual. *Id.*

11    **IV.**    **Analysis**

12          To begin with the *prima facie* claim, Defendants argue that Whaley fails to show he

13    has a disability as defined by the ADA. (Doc. 17 at 15). They cite Whaley's deposition in

14    which he states that he can perform his work with his heart condition. (Doc. 17-4 at 91). In

15    his Response, Whaley agrees that he was able to perform his job. (Doc. 18 at 9). This shows

16    there is no genuine dispute as to the second element of the *prima facie* claim. But Whaley

17    argues that he was disabled because Defendants regarded him as impaired. (*Id.*) Essentially,

18    Whaley argues that because Defendants terminated him after they learned of his heart

19    condition, they regarded him as disabled, which qualifies Whaley as disabled under 42

20    U.S.C. § 12102(1)(C). (*Id.*) This argument binds Whaley's status as a disabled individual

21    to the causation analysis, upon which the success or failure of his claim rests.

22          Defendants argue it would be impossible for Whaley's health to be the but-for cause

23    of his termination because they had decided to terminate Whaley before learning of his

24    heart condition. (Doc. 17 at 17). Defendants provide an August 13 handwritten letter from

25    James Kean in which he tells his son, Tod, that he is not satisfied with Whaley's

26    performance and worries Whaley's past performance at other companies will negatively

27    impact the sale of the companies. (Doc. 17-2 at 5). The letter goes on to say it is now a

28    matter of picking the right time to get a new CEO. (*Id.*) Defendants also cite Whaley's

deposition, in which Whaley acknowledges that Defendants had decided to terminate him before learning of the heart condition:

> Q:      Do you believe the defendants terminated your employment because of your alleged heart condition?
> A:      In part.
> Q:      What do you mean by that?
> A:      Because I don't think that [James Kean] wanted to hire somebody that had a heart condition, and since they had already decided they were going to terminate me anyway. I think they just went ahead and did it to eliminate their exposure to whatever.
> (Doc. 17-4 at 94–95).

In Whaley's Response, he argues "[r]egardless of whether the Companies were considering termination in the past, Whaley's heart condition was the last straw for the Companies—they had found the 'right time' to fire him." (Doc. 18 at 12). But the facts do not show that Defendants were only *considering* termination. The facts show Defendants had already *decided* upon termination. And they had made this decision before Whaley revealed his heart condition on August 23. (Doc. 17-2 5); (Doc. 17-4 at 94–95). Defendants were only considering when to terminate. Whaley offers no facts challenging this chronology of events.

Whaley does show an inference that the heart condition was the "last straw." (Doc. 18 at 12). As evidence, Whaley points to the short period between the time Defendants became aware of the heart condition and his termination, the allegation that the Defendants only talked about his health when delivering the termination letter to him, the allegation that Defendants never conversed with him about the reasons for his termination, and the allegation that the letter was written after Defendants learned of the heart condition. (Doc. 18 at 5–7, 14–15). Yet this only provides the inference that the heart condition was the last straw of many. Viewed in Whaley's favor, the inference shows that the heart condition was a motivating factor in Defendants' decision to terminate when they did, which does not satisfy the causation element in a *prima facie* ADA claim. *See Murray*, 934 F.3d at 1105.

The Court must evaluate this claim under a but-for causation standard. *Id.* Whaley argues that "the question of whether [Defendants] would have terminated him, independent of his heart condition, is one of credibility and factfinding, both inappropriate for resolution on summary judgment." (Doc. 18 at 16). This would be true if Whaley had provided facts showing a genuine dispute of this question. *See Celotex*, 477 U.S. at 323. Indeed, Whaley is required to show facts that the termination would not have occurred in the absence of the alleged discrimination by his former employer. *Cf. Nassar*, 570 U.S. at 360. He has not done so. Instead, the facts show Defendants had decided to terminate Whaley before learning of his alleged disability. These material facts are not in dispute. Whaley has not shown that his heart condition was the but-for cause of his termination. Therefore, Whaley's *prima facie* claim of discrimination under the ADA fails as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Extension of Time (Doc. 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 18th day of September, 2020.

Honorable Diane J. Humetewa
United States District Judge